UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ABDEL SOBUH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:12-CV-057 JD |
| | ) |
| DEAN HEATH, KYLE STOPCZYNSKI, | ) |
| RYAN OLMSTEAD, JEFF | ) |
| WROBLEWSKI, and ROBERT RAGER | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is an action against officers of the St. Joseph County Jail in South Bend, Indiana, for their alleged excessive use of force while processing an individual in the booking vestibule of the jail. In Plaintiff Abdel Sobuh's first amended complaint, he asserts claims under 42 U.S.C. § 1983 and § 1986 against Defendants Dean Heath, Kyle Stopczynski, Ryan Olmstead, Jeff Wroblewski, and Robert Rager, in their individual capacities. [DE 42.] The defendants have now moved for summary judgment, and that motion is fully briefed. [DE 50, 51, 55, 57]. The defendants have also moved to strike portions of Mr. Sobuh's response in opposition to summary judgment, [DE 61], and Mr. Sobuh sought leave to refile one of the documents at issue should the Court grant the defendants' motion, [DE 63].

For the following reasons, Defendants' motion to strike is DENIED, so Mr. Sobuh's motion for leave to refile is moot. In addition, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

Plaintiff Abdel Sobuh was arrested by an officer of the Mishawaka Police Department on December 28, 2009, for aggravated assault of a police officer. [DE 52-3.] After placing him

under arrest, the officer transported Mr. Sobuh to the St. Joseph County Jail, and radioed ahead to alert jail officials that Mr. Sobuh was unruly. When Mr. Sobuh arrived at the jail, four officers came to the sallyport to remove Mr. Sobuh from the police car and escort him into the booking vestibule for processing, where they were joined by a fifth officer. Mr. Sobuh sat on a bench as the five officers—Defendants Dean Heath, Kyle Stopczynski, Ryan Olmstead, Jeff Wroblewski, and Robert Rager—stood around him in a semi-circle, and the Mishawaka police officer entered the vestibule moments later. A nurse arrived shortly thereafter and treated abrasions Mr. Sobuh had sustained on his face during his arrest. Mr. Sobuh claims that throughout this time, the officers made various comments and slurs relating to his ethnicity and made him say the Pledge of Allegiance.

Once the nurse finished tending to Mr. Sobuh, the officers turned him around and removed his handcuffs. They then instructed him to take off his jacket and his belt. Mr. Sobuh took off his jacket and handed it to one of the officers. After removing his belt, Mr. Sobuh folded it in half, but then lowered it away from the officer who was reaching for it and raised his other hand towards the officer. Defendants assert that Mr. Sobuh "took an aggressive stance" and was about to use the belt as a weapon. However, Mr. Sobuh claims that he was asking who to give his belt to and that when no one responded, he simply tried to lay it down. At that point, one of the five officers stepped towards Mr. Sobuh and shoved him back against the wall. Mr. Sobuh fell to the floor, the five officers immediately piled around him, and a struggle ensued.

Mr. Sobuh is not visible in much of the video after the struggle began, as the five officers obstruct the cameras' views. However, about twenty seconds into the encounter, the officers backed away as one of them deployed his taser against Mr. Sobuh in dart mode. Several seconds after the tasing, the officers again crowded around and on top of Mr. Sobuh. One officer

appeared to throw a punch as the rest of the officers were piled on top of Mr. Sobuh. About thirty seconds later, an officer tased Mr. Sobuh two more times in drive stun mode. Over the next three minutes, the officers continued crowding around Mr. Sobuh, placing their body weights on top of him and restraining him with what looks to be substantial force. Over this span, one officer threw a second punch, and another officer threw five more punches towards Mr. Sobuh's upper body. The video is unclear as to where those punches landed. Mr. Sobuh claims that he was lying on his back and that the punches were directed at his chest and head, while the officers claim that they were using suprascapular strikes to Mr. Sobuh's back because he was not allowing them to place his hands in cuffs.

At some point during the altercation, Mr. Sobuh lost consciousness. About four minutes after the altercation started, the officers can be seen propping up Mr. Sobuh's torso, and his body appears to be limp. Several of the officers appear to keep holding Mr. Sobuh's lower body to the ground, while other officers seemingly try to help him regain consciousness. Several nurses then arrived and determined that Mr. Sobuh needed to go to the hospital, so they called the paramedics, who arrived several minutes later. At that time, the jail denied that it had assumed custody of Mr. Sobuh, and the arresting officer was unable to accompany him to the hospital, so Mr. Sobuh was released. When Mr. Sobuh later awoke at the hospital, no law enforcement officers were there and they had not placed a hold on him, so he was permitted to leave the hospital the following day upon his discharge.

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

"genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006); *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). In addition, since the parties have submitted a video recording of the incident, the Court need not credit a version of the facts that conflicts with any facts that are clearly portrayed in the recording, as there can be no "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where the footage is not clear, though, or where the parties disagree about a fact external to the videotape or an inference to be drawn therefrom, the usual deference to the non-movant applies. *See id.*

### III. PRELIMINARY MATTERS

There are two preliminary motions to address relating to which materials the Court will consider in ruling on the motion for summary judgment. In responding to Defendants' motion for summary judgment, Mr. Sobuh filed a brief, [DE 55], a second document responding individually to each sentence of Defendants' statement of material facts, [DE 55-1], a third

4

document setting forth additional facts, [DE 55-2], and an affidavit from Mr. Sobuh, [DE 56]. In response to these filings, Defendants filed a motion to strike the entirety of Mr. Sobuh's statement of additional facts and portions of his affidavit, and they also ask the Court to disregard other of Mr. Sobuh's factual statements that are unsupported by the record. Mr. Sobuh then moved for leave to refile his statement of additional facts in the event the Court deems his initial filing of that document improper.

Addressing Mr. Sobuh's statement of additional facts first, the Court sees no need to strike that document. Defendants argue that the statement of additional facts is improper because it does not comply with the Court's Local Rules. In the Northern District of Indiana, a party responding to summary judgment must submit a "Statement of Genuine Disputes" in either its response brief or its appendix, identifying the material factual disputes that require trial to resolve. N.D. Ind. L.R. 56-1(b). In responding to summary judgment, Mr. Sobuh instead followed the procedures of the Northern District of Illinois, which require a party to respond individually to each of the movant's factual statements and to also file a separate statement of additional facts. While Mr. Sobuh's submissions did not strictly comply with this Court's local rules, Mr. Sobuh still presented the facts necessary to resolve the motion and gave Defendants an opportunity to respond to them. Thus, the fact that he labeled them as "Undisputed Facts" instead of a "Statement of Genuine Disputes" and filed more documents than he needed to hardly warrants striking (or even litigating over) the document. The Court has the right to demand strict compliance with its Local Rules, and counsel must familiarize himself with those rules and comply with them in the future, but the Court denies Defendants' motion in this regard. Mr. Sobuh's motion for leave to refile this document is therefore denied as moot.

Defendants next ask the Court to strike portions of Mr. Sobuh's affidavit. Defendants first take issue with several paragraphs of the affidavit relating to Mr. Sobuh's arrest by the Mishawaka police officer on the basis that they are not relevant. However, while the Court ultimately agrees that these statements are not material, that is a question that is better addressed in connection with the merits of the motion for summary judgment than in a motion to strike, so the Court declines to strike these paragraphs. Defendants also object to several paragraphs that either make legal conclusions as to Defendants' malicious intent or offer Mr. Sobuh's belief as to Defendants' state of mind. However, as discussed below, Defendants' intent or state of mind is irrelevant because Mr. Sobuh's claim is governed by the Fourth Amendment's objective standard, so the Court need not address the admissibility of these statements.

Defendants further object to several of Mr. Sobuh's statements about the video recording for the reason that they are not based on personal knowledge. Defendants' objection is somewhat misplaced, as Mr. Sobuh has seen the video and does have personal knowledge of what it shows. However, Defendants are correct to the extent they are arguing that these statements violate the best evidence rule, under which a recording itself is required to prove its content. Fed. R. Evid. 1002. While it is appropriate for Mr. Sobuh to testify as to what happened to him and to reference the portions of the video that support his statements, the Court will only credit Mr. Sobuh's statements about the contents of the video to the extent they are consistent with the video. Defendants finally object to Mr. Sobuh's statement that he sustained a concussion, on the bases that it is hearsay and he is not qualified to make such a diagnosis himself. This fact is not material to the resolution of this motion, however, so the Court need not resolve this objection.

Last, Defendants ask the Court to disregard many of Mr. Sobuh's statements of additional facts on the basis that they are unsupported by the evidence. Many of these disputes are

Defendants next ask the Court to strike portions of Mr. Sobuh's affidavit. Defendants first take issue with several paragraphs of the affidavit relating to Mr. Sobuh's arrest by the Mishawaka police officer on the basis that they are not relevant. However, while the Court ultimately agrees that these statements are not material, that is a question that is better addressed in connection with the merits of the motion for summary judgment than in a motion to strike, so the Court declines to strike these paragraphs. Defendants also object to several paragraphs that either make legal conclusions as to Defendants' malicious intent or offer Mr. Sobuh's belief as to Defendants' state of mind. However, as discussed below, Defendants' intent or state of mind is irrelevant because Mr. Sobuh's claim is governed by the Fourth Amendment's objective standard, so the Court need not address the admissibility of these statements.

Defendants further object to several of Mr. Sobuh's statements about the video recording for the reason that they are not based on personal knowledge. Defendants' objection is somewhat misplaced, as Mr. Sobuh has seen the video and does have personal knowledge of what it shows. However, Defendants are correct to the extent they are arguing that these statements violate the best evidence rule, under which a recording itself is required to prove its content. Fed. R. Evid. 1002. While it is appropriate for Mr. Sobuh to testify as to what happened to him and to reference the portions of the video that support his statements, the Court will only credit Mr. Sobuh's statements about the contents of the video to the extent they are consistent with the video. Defendants finally object to Mr. Sobuh's statement that he sustained a concussion, on the bases that it is hearsay and he is not qualified to make such a diagnosis himself. This fact is not material to the resolution of this motion, however, so the Court need not resolve this objection.

Last, Defendants ask the Court to disregard many of Mr. Sobuh's statements of additional facts on the basis that they are unsupported by the evidence. Many of these disputes are

immaterial to this motion, so the Court need not individually address each of Defendants' objections. To be clear, however, in ruling on the motion, the Court only accepts either party's factual assertions to the extent they are supported by the evidence cited in the record.

For these reasons, Defendants' Motion to Strike is DENIED, and Mr. Sobuh's motion for leave to file his statement of additional facts is DENIED as moot.

## IV. DISCUSSION

Mr. Sobuh seeks monetary damages for claims under 42 U.S.C. § 1983 for Defendants' excessive use of force and under § 1986 for neglecting to prevent harm done by each of the other Defendants. [DE 42.] Defendants have moved for summary judgment as to both claims, asserting qualified immunity as to the § 1983 claim and asserting that the § 1986 claim fails as a matter of law because Mr. Sobuh has not alleged a conspiracy in violation of § 1985, upon which a § 1986 claim must be predicated. The Court addresses each claim in turn.

**A.      Section 1983 Claim for Excessive Force**

Mr. Sobuh's primary claim is that the officers used excessive force against him while processing him into the jail. Defendants have jointly moved for summary judgment on that claim on the grounds that they did not violate any of Mr. Sobuh's constitutional rights, and that even if they did, they are entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine of qualified immunity shields officers who perform discretionary duties from liability. *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). "The doctrine allows 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The Supreme Court has stated that the "driving force" behind qualified immunity was to ensure that "'insubstantial

7

claims' against government officials [were] resolved prior to discovery." *Pearson*, 555 U.S. at 231–32.

The Supreme Court has established a two-part test for determining whether an officer should be granted qualified immunity. *Pearson*, 555 U.S. at 232–36; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first question is whether the facts taken in the light most favorable to the plaintiff show that the defendants violated a constitutional right. *Pearson*, 555 U.S. at 232. The second question is whether that constitutional right was clearly established at the time of the alleged violation. *Id*. If either question is resolved in favor of the defendants, they will be entitled to summary judgment based on qualified immunity. *Id*. at 230–33. However, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial," and summary judgment must be denied. *Gonzalez*, 578 F.3d at 540 (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)).

### 1. Defendants' Violation of a Constitutional Right

In order to analyze the first prong of qualified immunity, whether Defendants violated Mr. Sobuh's constitutional rights, the Court must determine the source of Mr. Sobuh's rights. A claim of excessive force is essentially "one that seeks to impose liability for 'physically abusive governmental conduct.'" *Kingsley v. Hendrickson*, 744 F.3d 443, 449 (7th Cir. 2014) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). However, the Court evaluates a claim of excessive force not under "some generalized 'excessive force' standard," but "by reference to the specific constitutional standard which governs that right." *Id*. at 449 (citing *Graham*, 490 U.S. at 394). This may be the Fourth Amendment, the Eighth Amendment, or the Fourteenth Amendment, depending on the plaintiff's status within the criminal justice system when the alleged excessive force is applied. *See Graham*, 490 U.S. at 394. The Fourth Amendment applies at the time of an initial seizure, while the Eighth Amendment applies after an adjudication of

guilt and imposition of sentence. The Fourteenth Amendment applies in between those stages, where an individual has already been seized but has not yet been convicted and sentenced. *See Kingsley*, 744 F.3d at 449; *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

Here, Mr. Sobuh argues that the Fourth Amendment applied to him following his arrest, while Defendants argue that Mr. Sobuh had already become a pretrial detainee subject to the Fourteenth Amendment. In the Seventh Circuit, the dividing line between the Fourth and Fourteenth Amendments is the *Gerstein* hearing at which a judge determines that there is probable cause for a defendant's detention. *King v. Kramer*, No. 13-2379, 2014 WL 3362439 (7th Cir. July 10, 2014) (noting that "the Fourth Amendment governs challenges to conditions of confinement by a pretrial detainee awaiting a probable cause hearing"); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made.").

In arguing to the contrary, Defendants rely on *Forrest v. Prine*, 620 F.3d 739 (7th Cir. 2010), which also involved a claim of excessive force against an individual who was being processed into a jail after his arrest. Defendants' reliance on this case is justifiable, as the Seventh Circuit analyzed the plaintiff's claim in that case under the Fourteenth Amendment. *Id.* at 743. In doing so, however, it stated that the Seventh Circuit had not yet defined the temporal limitations of the Fourth Amendment, even though it had actually done so on multiple occasions. *Id.* The court did not cite to or purport to overturn those prior cases, so in a number of subsequent cases, district courts have declined to view *Forrest* as a definitive statement of the

law on this point. In any event, the Seventh Circuit has more recently reiterated its standard that the Fourth Amendment applies until the probable cause hearing, and the Court is bound by those more recent and definitive holdings. *King*, 2014 WL 3362439, at *1; *Ortiz*, 656 F.3d at 530. Therefore, because Mr. Sobuh had not yet appeared at a probable cause hearing at the time of the events in question, the Fourth Amendment is the source of Mr. Sobuh's substantive rights and presents the standard under which to evaluate his claim.[1]

"The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances[.]" *Graham*, 490 U.S. at 399. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010). Accordingly, "[t]he fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter." *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003) (citing *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997)). "In the end, the excessive force inquiry 'looks to whether the force used to seize the suspect was excessive in relation to the danger he posed.'" *Bender*, 600 F.3d at 780 (citing *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992)); *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("Force is reasonable only when exercised in proportion to the threat posed . . . and as the threat changes, so too should the degree of

---

[1] The Court would reach the same result under the Fourteenth Amendment, though. The constitutionally acceptable amount of force is largely the same between the Fourth and Fourteenth Amendments, *Kingsley*, 744 F.3d at 451–52, and the officers' alleged use of racial slurs, along with the amount and duration of force, would satisfy the subjective element of the Fourteenth Amendment analysis.

10

force . . . ."). The officers' intent, malicious or otherwise, for using force is irrelevant in a Fourth Amendment case. *See Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011); *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008).

Applying that standard here, the Court finds that the facts, when taken in the light most favorable to Mr. Sobuh, would establish that Defendants violated Mr. Sobuh's Fourth Amendment rights. The officers *might* have been justified in using some degree of force against Mr. Sobuh in the first instance, as the video shows Mr. Sobuh lowering his folded belt away from the officer's reaching hand and moving it behind his back. The officers could have reasonably viewed this as threatening behavior, which would have justified the use of some amount of force to maintain order in the jail. However, "the fact that an initial use of force may have been justified does not mean that all subsequent uses of that force were similarly justified." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 729 (7th Cir. 2013). "Rather, '[f]orce is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. . . . It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness.'" *Id.* (quoting *Cyrus*, 624 F.3d at 863).

When viewed in that light, and when considering Mr. Sobuh's testimony that he never resisted the officers, a jury could find that the amount of force Defendants used over the duration of the encounter was unreasonable. After shoving Mr. Sobuh against the wall and knocking him to the ground, the officers piled onto Mr. Sobuh, and the encounter continued for several minutes, up to and possibly after the point that Mr. Sobuh says he lost consciousness. During this time, the officers tased Mr. Sobuh at least three times and threw multiple punches, which, according to Mr. Sobuh, were directed towards his chest and head, not to his suprascapular, as Defendants claim. The five officers also brought their combined body weights to bear on top of

11

Mr. Sobuh for sustained periods, using their hands, elbows, knees, and feet, which left Mr. Sobuh unable to breathe. According to Mr. Sobuh, he never resisted or fought back against the officers throughout the encounter. If that is true, then the amount of force the officers employed would be unreasonable, as it clearly exceeded the amount of force that would have been necessary to disarm a non-resisting individual of his belt. *See Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007) (holding that once officers subdued a resisting individual, "additional punches and blows [were] unnecessary, and therefore, unreasonable").

Defendants ask the Court to disregard Mr. Sobuh's statement that he did not resist them on the basis that it is contradicted by the video. *See Scott*, 550 U.S. at 380. However, the video recordings here do not depict the events clearly enough to disregard Mr. Sobuh's statement. The officers were piled on top of and around Mr. Sobuh for most of the encounter, obstructing the cameras' views of Mr. Sobuh almost entirely, and the periods during which Mr. Sobuh is visible are too short and too blurry to definitively conclude that he was resisting. Therefore, for the present purposes, the Court must accept Mr. Sobuh's version of the facts, and because it is unreasonable to tase, punch, and restrain an individual with great force for several minutes in the absence of any resistance from the individual, the Court concludes that Mr. Sobuh has created a genuine factual dispute as to whether the officers violated his Fourth Amendment rights.

### 2. Whether the Right was Clearly Established

In order to avoid qualified immunity, Mr. Sobuh must also show that the right the officers violated was clearly established at the time of the incident. *Abbott*, 705 F.3d at 731. A constitutional right is "clearly established" for qualified-immunity purposes where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Anderson*, 483 U.S. at 640). To determine whether a constitutional right is clearly established, the Court looks to controlling precedent from both the

12

Supreme Court and the Seventh Circuit, and if there is no such precedent, the Court casts a wider net and examines "all relevant case law to determine 'whether there was such a clear trend in the case law that [the Court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (citing *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012)). Importantly, the right must be clearly established in a particularized sense, rather than in an abstract or general sense, but case law directly on point is not required to be clearly established. *Id.*

The right at issue here is clearly established, as numerous cases have held that it is unreasonable to continue using force against an individual who has ceased resisting. *Abbott*, 705 F.3d at 732 (holding that it was clearly established prior to 2007 "that police officers could not use significant force on nonresisting or passively resisting suspects" and that "police officers cannot continue to use force once a suspect is subdued"); *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) ("It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders."); *Sallenger*, 473 F.3d at 741–42 (holding that officers were not entitled to qualified immunity where they continued striking a previously-belligerent individual even after he ceased resisting); *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001) (holding that using force against a disarmed and passive suspect clearly violates the Fourth Amendment); *Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996) ("The fact that a certain degree of force may have been justified earlier in the encounter to restrain [the individual] does not mean that such force still was justified once [the individual] had been restrained."), *overruled on other grounds by McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002); *Schneider v. Love*, No. 09 C 3105, 2011 WL 635582, at *7–8 (N.D. Ill. Feb. 10, 2011) (noting that "it was well established that an officer cannot continue to use force against a suspect who is

13

subdued," and denying summary judgment where officers continued to hit, kick, and tase the plaintiff after he stopped resisting).

The encounter here continued for several minutes after the initial use of force, and entailed at least three uses of a taser, multiple closed-fist blows to Mr. Sobuh's head or upper body, and substantial amounts of force being applied to restrain Mr. Sobuh, preventing him from being able to breathe. Given the clarity of the law on this point, any reasonable officer would have known that using this amount of force against an unresisting individual would have been unreasonable. Therefore, Defendants are not entitled to qualified immunity, and summary judgment must be denied.[2]

**B.      Section 1986 Claim for Neglect to Prevent Harm from a Conspiracy**

Mr. Sobuh has also asserted a claim under § 1986, which establishes a cause of action against persons who are aware of a conspiracy to deprive individuals of the equal protection of the law, as detailed in § 1985, but who neglect to prevent the harm caused by the conspiracy. In support of their motion for summary judgment on this claim, Defendants argue that the § 1986 claim fails as a matter of law because Mr. Sobuh did not allege a § 1985 violation. Mr. Sobuh did not respond to this argument or otherwise address the § 1986 claim in opposing Defendants' motion. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Reklau v. Merch. Nat'l Corp.*, 808 F.2d 628, 629 n.4 (7th Cir. 1986); *see also Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 389 (7th Cir. 2012) (quoting *Reklau*). Here, Mr. Sobuh

---

[2] Defendants also moved for summary judgment on any § 1983 claim based on the Equal Protection Clause, since Mr. Sobuh's complaint alleges that Defendants discriminated against him on the basis of his ethnicity. In responding to the motion, Mr. Sobuh denied having brought such a claim: "Plaintiff has not asserted an Equal Protection Clause claim. It is unknown why Defendants' brief indicates that Defendants think there is such a count in the suit." [DE 55 p. 14]. Mr. Sobuh has therefore waived any claim based on the Equal Protection Clause.

responded at length relative to the § 1983 claim, but he did not address his § 1986 claim, so the Court construes his silence as abandoning this claim.

In addition, Mr. Sobuh's § 1986 claim would fail even absent this forfeiture. A claim under § 1986 cannot succeed without also establishing the existence of a conspiracy that would be actionable under § 1985. *See Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) (holding that liability under § 1986 is derivative of § 1985 liability, and without a violation of § 1985, there can be no violation of § 1986); *see also Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 203 (7th Cir. 1985). Mr. Sobuh has not identified facts establishing a conspiracy under § 1985, so his § 1986 claim necessarily fails as well. Therefore, summary judgment is GRANTED as to the § 1986 claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike [DE 61] is DENIED, and Plaintiff's Motion for Leave to Re-File Document 55-2 [DE 63] is DENIED as moot. Defendants' motion for summary judgment [DE 50] is GRANTED in part and DENIED in part; summary judgment is GRANTED as to the § 1986 claim, but is DENIED as to the § 1983 claim.

SO ORDERED.

ENTERED: July 23, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court